# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOAN TILY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-2582** |
| **v.** | : | |
| | : | |
| **ETHICON INC., *et al.*** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                      SEPTEMBER 8, 2020

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Joan Tily ("Plaintiff") filed this product liability action claiming injuries allegedly caused by a defective pelvic mesh implant device that was designed, manufactured, sold, and/or distributed by Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Defendants"). This civil action was filed as part of the Multi-District Litigation ("MDL") pending in the United States District Court for the Southern District of West Virginia, *In Re: Ethicon Inc., Pelvic Repair System Products Liability Litigation*, MDL No. 2327, [ECF 1], and was, subsequently, transferred to this Court following the close of discovery. [ECF 70].

Before this Court is Defendants' motion for summary judgment in which Defendants argue that Plaintiff's numerous claims are barred by the applicable statutes of limitations and/or are not cognizable claims.[1] [ECF 39, 40]. In her response, Plaintiff has withdrawn all of her claims except for a negligence claim (Count I) and a strict liability design defect claim (Count V),[2] and argues

---

[1]     Defendants filed a separate motion for summary judgment on grounds of judicial estoppel and lack of standing due to issues related to Plaintiff's bankruptcy matter. [ECF 37, 38]. This Order does not address any of the arguments made in that motion.

[2]     In her response, Plaintiff advises that she "will not proceed with" Counts II through IV and VI through XV. (ECF 47, at 2-3). Therefore, these claims are deemed withdrawn with prejudice. In addition,

that these two remaining claims are subject to equitable tolling and, thus, are timely filed. [ECF 46, 47]. The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendants' motion is granted and judgment is entered in favor of Defendants and against Plaintiff on these two claims.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). Because the procedural and factual histories are known to the parties, only the facts pertinent to the underlying motion will be discussed. These facts are gleaned primarily from Plaintiff's statement of material facts. To the extent that any facts are disputed, such disputes will be noted and construed in Plaintiff's favor. The pertinent facts are as follows:

> On October 3, 2007, Plaintiff underwent a surgical implantation of a TVT mesh device manufactured and designed by Defendants. The TVT device was implanted by Mohamed El-Mallah, M.D., to correct Plaintiff's stress urinary incontinence. Approximately six to eight months after the implant surgery, Plaintiff developed complications from the device, including, *inter alia*, recurrent stress urinary incontinence, frequency, urgency, pelvic and vaginal pain, painful urination, urinary tract infections, and emotional and psychological stress.[3] Between 2008 and 2011, Plaintiff experienced recurrent stress urinary incontinence and nocturia, but did not report any of these problems to her doctors. In October 2011, she experienced vaginal and pelvic pain, but did not discuss these symptoms with her doctor.
>
> Because of her continuing symptoms, Plaintiff eventually sought medical treatment, undergoing on January 9, 2012, a second implantation of a second mesh device (this one, manufactured by Boston Scientific). Plaintiff testified that in

---

Count XVII (Punitive Damages) and Count XVIII (Discovery Rule and Tolling) are not independent claims under Pennsylvania law. As such, these claims are dismissed. Only Count I (Negligence) and Count V (Strict Liability Design Defect) will be addressed herein.

[3]   Defendants dispute that these complications were the result of their TVT mesh device or that the device was defective.

January 2012, she had experienced pain and recurrent urinary incontinence that she believed might be related to her TVT device and that her second procedure was supposed to correct these conditions:

> Q.   You came to understand that Dr. El-Mallah was recommending a second surgical procedure for you, right?
>
> A.   Yes.
>
> Q.   And what did you understand that was going to involve?
>
> A.   I just thought it was another sling surgery.
>
> Q.   Okay.  You believed that he was putting in a second sling?
>
> A.   Or—or somehow fixing the first or removing the first and putting in a second.
>
> Q.   And did you believe in January of 2012 that there was something wrong with the first [sling]?
>
> A.   I had—I had my doubts.
>
> Q.   Was that because you were leaking, or was it some other reason?
>
> A.   Well, because I was in pain and leaking.  It was more the—more the pain part of it, but together it became intolerable, and I kept thinking, well, you know, maybe if I try something else, it will work better.

After the second operation, Plaintiff continued to suffer multiple complications, which led her, sometime in the beginning of 2014, to conduct a Google search on "sling surgery."  Shortly thereafter, Plaintiff contacted her attorneys to investigate whether she had a claim.  Plaintiff contends that it was at that point in 2014 that she realized Defendants' TVT mesh device was defective and the cause of her complications.  Plaintiff's complaint was filed on January 8, 2015.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice.

Fed. R. Civ. P. 56.  Specifically, Rule 56 provides that summary judgment is appropriate "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)-(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citations omitted).

4

**DISCUSSION**

As noted, Plaintiff commenced this action on January 8, 2015, by filing a short form MDL complaint in which she asserted numerous product liability claims premised on negligence, strict liability, fraud, and breach of warranty. After the close of discovery and before this case was transferred, Defendants moved for summary judgment on all of Plaintiff's claims on the basis, *inter alia*, that each is barred by Pennsylvania's two-year statute limitations. As noted, in her response, Plaintiff withdrew all of her claims except those based on negligence and strict liability design defect. Plaintiff argues that these remaining claims are timely as they are subject to equitable tolling pursuant to the discovery rule and the fraudulent concealment doctrine. Plaintiff is, however, mistaken. For the reasons set forth herein, this Court finds that Plaintiff's remaining claims are untimely.

Generally, in Pennsylvania, "an action to recover damages for injuries to the person . . . caused by the wrongful act or neglect or . . . negligence of another" must be commenced within two years of the injury. 42 Pa. Cons. Stat. § 5524(2).[4] This includes injuries caused by defective products. The purpose of the statute of limitations is to ensure that "the passage of time does not damage the defendant's ability to adequately defend against claims made." *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997). "[L]imitations periods are computed from the time that the cause of action accrued." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing 42 Pa. Cons. Stat. § 5502(a)). "[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Id.* In a personal injury lawsuit, the right to sue arises when the injury is inflicted. *Id.* "It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him-or herself of the facts and circumstances upon which the right of recovery

---

[4]     In a diversity case such as this, the district court must determine which state's substantive law will govern. This Court agrees with the parties that the substantive law of Pennsylvania governs this case.

is based and to institute suit within the prescribed period." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (citing *Hayward v. Med. Ctr. of Beaver Cty.*, 608 A.2d 1040, 1042 (Pa. 1992)). "Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action." *Fine*, 870 A.2d at 857. However, there are exceptions that toll the running of a statute of limitations. *Id.* at 858. The discovery rule and the doctrine of fraudulent concealment are such exceptions. *Id.* Here, Plaintiff seeks to apply both exceptions to avoid the applicable two-year limitations bar.

### *Discovery Rule*

"The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Dalrymple*, 701 A.2d at 167. The Supreme Court of Pennsylvania has emphasized that the discovery rule "is an equitable one," and excludes the period of time "during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury." *Id.* (emphasis in original). The rule "arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) (emphasis in original). "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple*, 701 A.2d at 167.

When applied, the discovery rule only excludes the period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware that he or she has been injured. *Hayward*, 608 A.2d at 1043. Thus:

> [a] court presented with an assertion of applicability of the "discovery rule" must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action.
>
>                ***
>
> [T]he "discovery rule" exception arises from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were actually ascertained within the period.

*Pocono Int'l Raceway*, 468 A.2d at 471-72.

"Pennsylvania's formulation of the discovery rule reflects a narrow approach 'to determining accrual for limitations purposes' and places a greater burden upon Pennsylvania plaintiffs vis-à-vis the discovery rule than most other jurisdictions." *Gleason*, 15 A.3d at 484 (quoting *Wilson v. El-Daief,* 964 A.2d 354, 364 (Pa. 2009)). The Supreme Court of Pennsylvania further described the discovery rule as follows:

> The commencement of the limitations period is grounded on "inquiry notice" that is tied to "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." The discovery rule operates to balance the rights of diligent, injured plaintiffs against the interests of defendants in being free from stale claims, in furtherance of salient legislative objectives. The balance struck in Pennsylvania has been to impose a relatively limited notice requirement upon the plaintiff, but to submit factual questions regarding that notice to the jury as fact-finder.
>
>                ***
>
> The *sine qua non* of the factual inquiry into the applicability of the discovery rule in any given case is the determination whether, during the limitations period, the plaintiff was able, through the exercise of reasonable diligence, to know that he or she had been injured and by what cause.

*Gleason*, 15 A.3d at 484–85 (citations omitted). As to the reasonable diligence expected of a plaintiff to discover his or her injury, the Supreme Court of Pennsylvania has consistently held:

> "There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.  This is what is meant by reasonable diligence."  Put another way, "the question in any given case is not, what did the plaintiff know of the injury done him?  But, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" While reasonable diligence is an objective test, "it is sufficiently flexible ... to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others."

*Id.* at 485 (quoting *Fine*, 870 A.2d at 858-59).  A court may determine that the discovery rule does not apply, as a matter of law, where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause." *Fine*, 870 A.2d at 858-59.

Here, as the party seeking to invoke the discovery rule, Plaintiff bears the burden of proving its applicability.  *See Fine*, 870 A.2d at 858.  Therefore, Plaintiff must demonstrate that despite her "reasonable diligence," she was unable to discover her injury until at least January 8, 2013. *Wilson*, 964 A.2d at 363, 366 n.12.  The limitations period began to run on Plaintiff's negligent and product liability claims when she either knew, or reasonably should have known, of her alleged injuries. Since Plaintiff filed her complaint in January 8, 2015, the present inquiry is whether Plaintiff knew, or reasonably should have known, of her alleged injuries, and that her injuries were caused by Defendants' negligence or defective product prior to January 8, 2013.  If Plaintiff knew or reasonably should have known of her injuries and causal factor prior to January 8, 2013, her claims are barred.

The undisputed facts establish that Plaintiff discovered or, should have discovered through the exercise of reasonable diligence, her injuries and the cause thereof by at least January 9, 2012. By that date, Plaintiff had experienced years of pain and urinary leakage following the implant of Defendants' TVT mesh device in 2007—complications that she did not report to or discuss with her doctor. More importantly, by January 2012, Plaintiff believed that her pain and numerous other symptoms were attributable to her TVT mesh implant, and she had undergone a second surgical procedure to correct these problems which she then associated with the TVT mesh implant. Specifically, at her deposition, Plaintiff testified that, as of January 2012, she "had [her] doubts" as to the TVT implant. Based on Plaintiff's admitted "doubts," in combination with her years of pain and symptoms, which began to occur within months of Plaintiff's TVT implant in 2007, this Court finds that these undisputed facts were sufficient to have placed Plaintiff on inquiry notice of her injury, such that she was under an obligation to "direct diligence in the channel in which it would be successful," *see Fine*, 870 A.2d at 858, and, therefore, triggered the start of the statute of limitations period.

It is also indisputable that, had Plaintiff undertaken even minimal diligence in the two years following her second surgery in January 2012, she would have discovered abundant facts and evidence to inform her of the source of her injury. For example, in 2008, the Food and Drug Administration issued a public health notification concerning complications (including pain and recurrence) associated with transvaginal mesh implants for pelvic organ prolapse and stress urinary incontinence. In addition, by 2012, thousands of plaintiffs had begun filing lawsuits against pelvic mesh manufacturers, including against Defendants, alleging the same types of injuries Plaintiff suffered, and caused by the same defects that Plaintiff asserts here. Notwithstanding the

abundance of this readily and publicly available information, Plaintiff never sought it out, nor did she discuss her continuing pain with a doctor.

The fact that this information was readily available to Plaintiff with the exercise of minimum diligence is evidenced by Plaintiff's own actions in 2014.  Plaintiff testified that more than two years after her second surgery, she undertook a *single* Google search of "sling surgery" due to her continuing symptoms, similar to or the same symptoms she had begun experiencing six to eight months after her initial implant *in 2007*.  According to Plaintiff, her search revealed "[t]hat sadly there's a lot of women out there, including myself, that are suffering from -- from being, I feel, misled and betrayed and -- from unethical companies."  The readily available information gleaned from Plaintiff's single internet search led Plaintiff to conclude that her pain and other symptoms were caused by her TVT implant and to immediately contact her underlying attorneys about possible claims.  Even then, Plaintiff did not file her complaint for nearly another year (January 8, 2015); more than seven years after her TVT implant surgery and nearly three years after Plaintiff acknowledged having "doubts" about her TVT implant.  In light of these undisputed facts, Plaintiff's claims are not saved by application of the discovery rule.

### Doctrine of Fraudulent Concealment

Plaintiff also argues that Defendants fraudulently concealed information which precluded her from discovering necessary facts underlying her claims.  Plaintiff's argument is, however, belied by the undisputed evidence.

"For the doctrine of fraudulent concealment to be applicable, '[a] defendant must have committed some affirmative independent act of concealment upon which [a] plaintiff[] justifiably relied.'"  *Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 650 (Pa. Super. Ct. 2010) (quoting *Lange v. Burd*, 800 A.2d 336, 339 (Pa. Super. Ct. 2002)) (alterations in original); *see also Bohus v. Beloff*, 950

F.3d 919, 925 (3d Cir. 1991) (applying Pennsylvania law).  This doctrine only tolls the statute of limitations where the defendant has deceived the plaintiff—intentionally or unintentionally—such that the plaintiff is unaware of the injury and its cause.  *Fine*, 870 A.2d at 860-61.  Significantly, even where a plaintiff establishes that the doctrine applies, it will only toll the statute of limitations until the time that the plaintiff knows or should have known of the claim for the purposes of the discovery rule.  *See Bohus*, 950 F.3d at 925-26 (noting that under Pennsylvania law, "the inquiry under the fraudulent concealment doctrine is the same as that under the discovery rule.").  Plaintiff bears the burden of proving the applicability of the fraudulent concealment doctrine by "clear, precise, and convincing evidence."  *Fine*, 870 A.2d at 860.

Plaintiff has not presented, and cannot present, evidence sufficient to meet her burden on fraudulent concealment.  As set forth above, the undisputed evidence shows that Plaintiff either was aware, or reasonably should have been aware, of her injury and its cause by January 9, 2012, at the latest.  Further, Plaintiff has not presented any evidence (beyond the bare allegations in her complaint) to support any affirmative acts of concealment by Defendants.  It is well-settled that Plaintiff must go beyond the mere allegations in her complaint to meet her summary judgment burden.  *Celotex*, 477 U.S. at 324.  Having failed to do so here, the statute of limitations on Plaintiff's negligence and strict liability claims expired, at the latest, on January 9, 2014, nearly a year before Plaintiff commenced this action.  Accordingly, Plaintiff's claims are time-barred, and judgment will be entered in favor of Defendants.

**CONCLUSION**

For the reasons stated herein, this Court finds that Plaintiff's claims against Defendants are barred by the applicable two-year statute of limitation.  Accordingly, Defendants' motion for

summary judgment is granted, and judgment is entered in favor of Defendants and against Plaintiff

on all remaining claims.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J. U.S.D.C*